# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                        )
**DAVID G. MAGRAW,**                    )
                                        )
      **Petitioner,**            )
                                        )        **Civil Action No.**
    **v.**                         )        **09-11534-FDS**
                                        )
**GARY RODEN,**                         )
                                        )
      **Respondent.**            )
_____)

## MEMORANDUM AND ORDER ON
## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

**SAYLOR, J.**

     This is a habeas corpus proceeding under 28 U.S.C. § 2254(d).  Petitioner David G.

Magraw was convicted by a jury in Massachusetts state court of second-degree murder.  The

conviction arose out of the death of his estranged wife during the time that the couple was

negotiating the terms of their divorce.  The conviction, for which he is now serving a term of life

imprisonment, came after a second trial, conducted after the Supreme Judicial Court overturned

his initial conviction and granted him a retrial.

     Petitioner asserted four claims in support of his petition for relief:  (1) that the evidence

was insufficient to support his conviction in violation of the Due Process Clause of the

Fourteenth Amendment; (2) that the prosecution made statements and elicited testimony during

the trial about certain incidents, including the first trial, that deprived petitioner of his

constitutional right to a fair trial under the Sixth and Fourteenth Amendments; (3) that the trial

court's admission of certain hearsay statements violated his rights under the Confrontation

Clause of the Sixth Amendment; and (4) that the Commonwealth destroyed certain medical

evidence in violation of the Due Process Clause of the Fourteenth Amendment.

The matter was referred to United States Magistrate Judge Robert B. Collings pursuant to 28 U.S.C. § 636(b)(1) for findings and recommendations.  On February 19, 2013, the Magistrate Judge issued a Report that recommended that the petition be denied.

Petitioner timely filed an objection to the Report and Recommendation.  He objected to the following findings:  (1) that the Massachusetts Appeals Court reasonably applied *Jackson v. Virginia*, 443 U.S. 307 (1979), in determining that there was sufficient evidence to support his conviction beyond a reasonable doubt; (2) that the medical evidence destroyed by the Commonwealth was not "apparently exculpatory;" (3) that the prosecution's improper statements and questioning at trial did not infect the trial with unfairness sufficient to render the conviction unconstitutional.

Upon *de novo* review, and for the reasons set forth below, the Court will adopt the Report and Recommendation of the Magistrate Judge.

I.   **The Standard for Habeas Corpus Review**

Under 28 U.S.C. § 2254(d), a federal court may not issue a habeas petition "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state court decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Petitioner invokes both provisions here.

## II.     <u>The Application of *Jackson v. Virginia*</u>

Petitioner contends that there was insufficient evidence to support his conviction in violation of the Due Process Clause of the Fourteenth Amendment.  In support of this contention, he argues that the Commonwealth's case was based upon circumstantial evidence, and that the finding of the Appeals Court as to the sufficiency of the evidence was based upon conjecture from that circumstantial evidence, rather than the evidence itself.  Petitioner contends that the evidence was insufficient both as to (1) the cause of death (that is, was his estranged wife murdered?) and (2) the identity of the perpetrator (that is, was he the murderer?).  Petitioner contends that in order to conclude that his wife died of strangulation and that petitioner perpetrated the crime, the jury was required to engage in undue speculation.

In determining whether evidence is sufficient to uphold a conviction, the relevant constitutional question is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  As here, when a state court has reviewed a challenge to the sufficiency of the evidence under the appropriate constitutional standard, a federal court may overturn that decision "only if the state court decision was 'objectively unreasonable.'" *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011); *see also Leftwich v. Maloney*, 532 F.3d 20, 23 (1st Cir. 2008) (holding that the "state court's decision is not vulnerable unless it evinces some increment of incorrectness beyond mere error").  Petitioner also correctly cites *United States v. Flores-Rivera*, 56 F.3d 319, 323 (1st Cir. 1995), for the proposition that when "the evidence viewed in the light most favorable to the verdict gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime

charged, [the] court must reverse the conviction."

Here, the Appeals Court determined that "the evidence taken in the light most favorable to the Commonwealth, although circumstantial in nature, was extensive and proved the defendant's guilt beyond a reasonable doubt." *Commonwealth v. Magraw*, 58 Mass. App. Ct. 1112, 2003 WL 21955875, at *2 (2003). The Magistrate Judge concluded that this brief discussion of the claim was not "contrary to" the *Jackson* standard, despite the lack of citation to a federal case. *See* Rept. at 13 (citing *Early v. Packer*, 537 U.S. 3, 8 (2002)). Petitioner does not dispute that determination, but rather challenges the application of the *Jackson* standard to the record evidence.

The record indicates that the trial involved several days of medical expert testimony on the issue of the cause of the victim's death. The Commonwealth called two medical examiners, one of whom performed the autopsy. Both concluded that the victim died of mechanical asphyxiation (in other words, strangulation). The defense put forth his own medical expert, a forensic pathologist and former medical examiner, who attributed the victim's death to natural causes.

The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." 443 U.S. at 319; *see also Hurtado v. Tucker*, 245 F.3d 7, 19 (1st Cir. 2001) ("[W]here the argument over the correctness of the state court's ultimate conclusion is one of degree calling for a choice between credible (although mutually opposed) views, the habeas inquiry on objective unreasonableness ends."). Here, the jurors were asked to choose between competing opinions from competent and qualified experts. It is not the role of this

Court, on habeas review, to overrule the jury's decision as to which version was more credible. *See Cavazos*, 132 S. Ct. at 4 ("Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold. The Court of Appeals in this case substituted its judgment for that of a California jury on the question whether the prosecution's or the defense's expert witnesses more persuasively explained the cause of a death. For this reason, certiorari is granted and the judgment of the Court of Appeals is reversed."). Accordingly, the Appeals Court was not unreasonable in its determination that a reasonable juror could have found beyond a reasonable doubt that the victim died of strangulation.

The evidence that petitioner was the perpetrator is more circumstantial. There was no physical evidence on the victim that implicated petitioner specifically. Petitioner conceded at trial that he was at his wife's home from around 9:00 a.m. to 10:15 a.m. on the morning that she died; in fact, he was the last known person to have seen her alive. There was evidence indicating that the time of death was sometime between 11:19 a.m. and 1:19 p.m. There was also evidence that petitioner expressed happiness at wife's passing, indicating consciousness of guilt. And there was evidence that she feared being alone with petitioner and that he was angry with her about the division of marital assets she was seeking. There was no evidence of forcible entry into the home, a fact that the Commonwealth emphasized in suggesting that petitioner had "sole access" to the victim. The Magistrate Judge found that he could not conclude, given this evidence, that the Appeals Court was unreasonable in its determination that a rational jury could have found petitioner guilty beyond a reasonable doubt.

"Guilt beyond a reasonable doubt cannot be premised on pure conjecture. But a

conjecture consistent with the evidence becomes less and less a conjecture, and moves gradually toward proof, as alternative innocent explanations are discarded or made less likely." *Stewart v. Coalter*, 48 F.3d 610, 615-616 (1st Cir. 1995).  Where, as here, the Commonwealth's case was premised largely on circumstantial evidence and inferences, it is the task of the Court, on habeas review, to adduce whether *any* rational trier of fact could have found proof of guilt beyond a reasonable doubt.  *Newman v. Metrish*, 543 F.3d 793, 797 (6th Cir. 2008).  The inquiry becomes even more deferential where, as here, the Appeals Court has determined that the evidence was sufficient to support the conviction.  Again, the role of this Court is not to make its own determination of guilt, but rather to determine whether the Appeals Court reasonably determined that the evidence was sufficient.

It is true that federal courts have occasionally reversed state court decisions on the basis that the evidence relied too heavily on conjecture to support a conviction.  But those cases almost invariably involve a complete lack of physical evidence linking the accused to the victim or the scene of the crime.  *See, e.g., O'Laughlin v. O'Brien*, 568 F.3d 287, 304 (1st Cir. 2009) ("It bears repeating that the prosecution had to rely on circumstantial evidence because no physical or DNA evidence linked O'Laughlin to the attack despite the copious amount of blood at the crime scene.  Considering the large amount of blood, it is difficult to fathom how O'Laughlin was able to avoid having any blood or other DNA evidence connect him to Mrs. Kotowski."); *Newman*, 543 F.3d at 797 ("[E]ven assuming that Newman's gun was indeed the one used in the homicide, there was no evidence of what happened to it between that date and the date of the homicide, and we need not speculate as to what might have happened.").  Here, too, there is a lack of such physical evidence.  But unlike the defendants in those cases, petitioner has admitted

that he was at the scene of the crime on the morning it took place.  Where the evidence places a defendant at the scene of the crime in close temporal proximity to its perpetration, the inference of his guilt gains substantial weight.  *Accord. Newman*, 543 F.3d at 797 n. 4 ("For example, if the witness had observed the gun in Newman's house only a day before the homicide and had been more certain that it was indeed the same gun as that used in the homicide, there would be a stronger inference that Newman was present.  With these hypothetical facts, Newman's petition would more closely resemble those made in cases where circumstantial evidence did satisfy the Jackson standard.").  Furthermore, the Commonwealth introduced credible evidence of motive and opportunity.  There was also credible evidence—although vigorously disputed—concerning petitioner's consciousness of guilt.

Where there is no physical evidence and no eyewitness account, it is possible to "imagine [or concoct] innocent explanations for almost anything," but a reasonable jury can reject them as "far-fetched."  *Stewart*, 48 F.3d at 615.  And it is well-established that "the  evidence need not exclude every reasonable hypothesis except that of guilt."  *Newman*, 543 F.3d at 797.  The Appeals Court determined that a rational juror could have made the necessary credibility determinations and reasonable inferences to eliminate any reasonable doubt as to petitioner's guilt.  This Court does not find that determination to be unreasonable, and is not prepared to substitute its judgment based upon the cold record for the fact-finding determination of the jury.

Accordingly, this Court finds that the decision of the Appeals Court was not an unreasonable application of *Jackson*, and petitioner will therefore not be granted habeas corpus relief on that basis.

III.     **The Destruction of Medical Evidence**

Petitioner further contends that the Commonwealth improperly destroyed certain exculpatory medical evidence (in particular, the victim's larynx) in violation of the Due Process Clause of the Fourteenth Amendment.

The principal cases governing the use of lost or destroyed evidence are *California v. Trombetta*, 467 U.S. 479, 485 (1984) and *Arizona v. Youngblood*, 488 U.S. 51, 55 (1988). *See Olszewski v. Spencer*, 466 F.3d 47, 55 (1st Cir. 2006) ("*Trombetta* and *Youngblood* govern the constitutionality of the nondisclosure of evidence in cases in which the government no longer possesses the disputed evidence."). The distinction articulated by *Trombetta* and *Youngblood* deals with the nature of the withheld evidence. If the evidence was only "potentially useful," *Youngblood* requires that petitioner prove bad faith on the part of the government in destroying or withholding it. *Youngblood*, 488 U.S. at 56. However, if the evidence was "apparently exculpatory," *Trombetta* dictates that petitioner need not prove bad faith. *Trombetta*, 467 U.S. at 485-86. Petitioner contends that the medical evidence at issue was "apparently exculpatory," and, therefore, the Appeals Court erred in rejecting his claim for failure to prove bad faith on the part of the Commonwealth.

As a preliminary matter, it is important to note that the finding of the Appeals Court that petitioner failed to demonstrate the exculpatory nature of the evidence at issue is a factual finding that this Court "shall [presume] to be correct," and petitioner bears the burden of disproving such a finding by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The Magistrate Judge found that petitioner failed to meet that burden.

Petitioner argues that the Commonwealth would have preserved the evidence if it had

been inculpatory, and, therefore, because it was not preserved, it must have been exculpatory.

This is a flawed logical inference for a number of reasons, not the least of which is that the

evidence may have simply been inconclusive or even cumulative.  The medical evidence that

was not preserved is analogous to the untested semen samples in *Youngblood*; there, as here, "the

possibility that the [medical evidence] could have exculpated respondent if preserved or tested is

not enough to satisfy the standard of constitutional materiality."  *Youngblood*, 488 U.S. at 56.

Accordingly, the Court finds that the Appeals Court correctly applied constitutional precedent

when it denied petitioner's due process claim on the ground that he could not show that the

medical evidence was "apparently exculpatory" or that the Commonwealth destroyed it in bad

faith.

Upon *de novo* review, this Court finds that the Appeals Court did not unreasonably apply

established Supreme Court precedent to petitioner's due process claim.  Accordingly, his claim

for habeas corpus relief on that basis will be denied.

### IV.      The Commonwealth's Allegedly Improper Statements and Questioning

Petitioner's final contention is that the Commonwealth engaged in prosecutorial

misconduct in violation of his right to a fair trial under the Sixth and Fourteenth Amendments.

Specifically, petitioner contends that the Commonwealth's two references to his previous

trial—in direct contravention of the trial court's order not to do so—"so infected the trial with

unfairness as to make the resulting convictions a denial of due process."  *Darden v. Wainwright*,

477 U.S. 168, 181 (1986).  Because the Appeals Court made only cursory reference to

petitioner's claims of prosecutorial misconduct, it is difficult for the Court to ascertain whether

those claims were adjudicated on the merits of the *federal* claims and therefore entitled to

deferential review.  *See Clements v. Clarke*, 592 F.3d 45, 52 (1st Cir. 2010) (nothing that "determining precisely which substance [a state court relied on] proves a bit more elusive").  In an abundance of caution, the Court will review the claims *de novo*.

The two references to the previous trial occurred during the cross-examination of petitioner's expert forensic pathologist, who had also testified in the first trial.  Twice during that examination, the Commonwealth referred the defense witness to his prior testimony given "at the first trial."  Tr. X at 136:18, 158:6.  The trial judge appropriately admonished the prosecution, but refused to grant a mistrial on the basis of those references.  The Magistrate Judge likewise concluded that the two isolated references did not "so infect the trial with unfairness as to make the resulting conviction a denial of due process;" his Report emphasized, in particular, the fact that the references did not make clear that the "first trial" was a criminal trial, let alone that it led to a conviction.  *See* Rep. and Rec. at 27-28.

This Court has independently examined the trial record to determine whether the references to petitioner's first trial amounted to unconstitutional prosecutorial misconduct.  Both of the references occurred when the prosecutor was confronting the witness with prior inconsistent statements made in the course of his testimony at the first trial.  Both appear to have been made for the purpose of referring to the testimony in the transcript that the prosecution was using with the witness.  Neither reference indicated that petitioner was found guilty in the previous trial.  Over defense counsel's strong objection, the trial judge decided not to grant a mistrial on the basis of the comments, although the judge did reprimand the prosecution and directed that counsel choose his words very carefully to avoid another misstep.

There is, of course, no excuse for the error—particularly the second time that it occurred.

That is not enough, however, to warrant habeas relief.  Although this Court is not convinced that the comments were completely innocuous, the record does appear to indicate that the Commonwealth did not intend to impermissibly draw the jury's attention to the existence of a prior trial.  More importantly, it is unlikely that the statements actually had any significant prejudicial effect.  Fairly read in context, the statements were not so prejudicial as to infect "the trial with unfairness as to make the resulting convictions a denial of due process."  *Darden*, 477 U.S. at 181.

Upon *de novo* review, this Court finds that petitioner's prosecutorial misconduct claim is without merit.  Accordingly, his claim for habeas corpus relief on that basis will be denied.

**V.**     **Conclusion**

For the foregoing reasons, upon *de novo* review, petitioner's objections to the Report and Recommendation of the Magistrate Judge are overruled, and the Report and Recommendation is accepted by the Court pursuant to 28 U.S.C. § 636(b)(1).  The petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  March 22, 2013

11